**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **CHRISTINE M.[1]**, | Case No. 3:20-cv-1708-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala, 410 East 10th Avenue, Suite 240, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Christine M. (Plaintiff) brings this action under § 205(g) of the Social Security Act (Act),

*as amended*, 42 U.S.C. §405(g), to obtain judicial review of a final decision of the Commissioner

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

of the Social Security Administration (Commissioner) denying Plaintiff's application for

Disability Insurance Benefits (DIB) under Title II of the Act. For the reasons below, the

Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

"The scope of review for a Social Security denial of benefits is limited." *Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The district court must affirm the Commissioner's

decision if it is based on the proper legal standards and the findings are supported by substantial

evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It

is not the role of the reviewing court to freshly examine ambiguities or conflicts in the evidence.

*See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (quoting Andrews, 53 F.3d at 1039).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff first filed an application for DIB on December 31, 2016. AR 191. She alleged a disability onset date of December 12, 2013. *Id.* Plaintiff was born on June 3, 1961 and was 52 years old on the alleged onset date. AR 87. Plaintiff's claim was denied on May 15, 2017, and again upon reconsideration on September 14, 2017. AR 15. Plaintiff filed a written request for a hearing on November 7, 2017. *Id.* Plaintiff then appeared and testified before Administrative Law Judge (ALJ) Richard Geib on October 17, 2019 in Portland, Oregon. AR 33-71. The ALJ issued an unfavorable decision finding Plaintiff not disabled under the Social Security Act and therefore ineligible for DIB. AR 12-27. Plaintiff sought review by the Appeals council. AR 1. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* Plaintiff now seeks judicial review of the ALJ's decision by this Court under 42 U.S.C. § 405(g).

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step could be dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" (RFC). This is an assessment
of work-related activities that the claimant may still perform on a regular and
continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement of the Act on December 31, 2017. AR 17. The ALJ further noted that Plaintiff must establish disability on or before that date to be entitled to DIB. AR 16. The ALJ then applied the sequential analysis. AR 16-27.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through her date last insured. AR 17. At step two, the ALJ found that Plaintiff's fibromyalgia, chronic fatigue syndrome (CFS), right knee osteoarthritis, obesity, and obstructive sleep apnea all constituted severe impairments, meaning they significantly limited Plaintiff's ability to perform basic work activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment that meets or medical equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

Between steps three and four, the ALJ formulated Plaintiff's RFC. The ALJ found that:

> . . . through the date last insured, [Plaintiff] had the residual
> functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except can occasionally climb ramps and stairs and
> never climb ladders, ropes, scaffolds and can occasionally kneel,
> crouch and crawl; and should avoid even moderate exposure to
> work hazards, such as moving machinery and unprotected heights.

AR 19. At step four, the ALJ found that Plaintiff could perform past relevant work. AR 25.

Specifically, the ALJ found that with Plaintiff's RFC, Plaintiff could work as a teacher as

generally performed, and as a telemarketer as was actually and generally performed. AR 26.

Although the ALJ could have stopped at this step and found Plaintiff not disabled, the ALJ

continued his analysis with "alternative findings" for step five of the sequential evaluation

process. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found, consistent with

vocational expert testimony, that Plaintiff could perform work as a teacher's aide, a job

with 75,000-100,000 jobs nationally. AR 26 Thus, at both step four and step five of the

sequential evaluation process, the ALJ concluded that Plaintiff is not disabled.

## DISCUSSION

In seeking review, Plaintiff alleges that the ALJ erred by: (A) failing to provide clear and

convincing reasons for discrediting Plaintiff's symptom testimony; and (B) failing to follow the

requirements of 20 C.F.R. § 404.1520a in determining whether Plaintiff's mental health issues

were severe.

**A. Plaintiff's Testimony**

**1. Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *See Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner also recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others on the claimant's location, frequency, and duration of symptoms, the effect of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications, and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports about the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

Plaintiff only disputes the ALJ's subjective symptom findings with respect to Plaintiff's fibromyalgia and CFS. The diagnosis of fibromyalgia and CFS are not in dispute; the ALJ lists them as two of Plaintiff's "severe" impairment. AR 17. The Court thus moves on to step two of the analysis, determining whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony on the severity of her symptoms that are supported by substantial evidence in the record. *Lingenfelter*, 504 F.3d at 1036.

From the ALJ's opinion, the Court discerns four reasons the ALJ discounted Plaintiff's testimony: (1) improvement with treatment; (2) failure to seek treatment or report exacerbated symptoms for long periods of time and receiving conservative treatment; (3) inconsistency with activities of daily living (ADL); and (4) lack of support in the objective medical record. AR 22-23. The Court finds all the reasons except Plaintiff's ADLs to be clear and convincing, and supported by substantial evidence in the record. Although the ADL inconsistency is not upheld, the ALJ's decision evaluating Plaintiff's testimony is upheld because of the other three reasons meeting the relevant legal standard. *See Batson*, 359 F.3d at 1197.

Plaintiff also assigns legal error to the ALJ's determination, alleging that he failed to properly follow SSR 12-2p when forming Plaintiff's RFC. The Court is not convinced such legal error occurred and is not persuaded to remand on those grounds. Without such error, the Court "may not engage in second guessing" on the ALJ's assessment of testimony if clear and convincing reasons are given and those reasons are supported by substantial evidence, as they are here. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### a.  Plaintiff's Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Plaintiff argues that her fibromyalgia was not responsive to treatment and medication after 2013. As the ALJ pointed out, however, the record reflects otherwise. Plaintiff was prescribed meloxicam in January 2014 to help manage the symptoms of fibromyalgia and reported positive effects from its use.

The ALJ cited several reports where Plaintiff claimed improvement in symptoms while taking meloxicam. AR 20. These include a treatment note from February 2014, in which Plaintiff demonstrated "definite benefits from using meloxicam." *See* AR 354. The ALJ also cited a September 2015 progress note from Plaintiff's rheumatologist, which stated that her fibromyalgia was stable and "[m]eloxicam does work well for pain issues." *See* AR 398. The ALJ noted that Plaintiff only told her physician that meloxicam no longer managed her symptoms in September 2018, well after she no longer met the insured status requirement of the Social Security Act. AR 22. In other words, except for a single month, Plaintiff was taking

meloxicam for the entire relevant period at issue and reported positive results from that medication.

Substantial evidence in the record supports the ALJ's finding that meloxicam assuaged Plaintiff's fibromyalgia symptoms. In addition to the February 2014 and September 2015 progress notes, an April 2015 progress note states that "[Plaintiff] relates the meloxicam does help. If she doesn't take it the stiffness and pain start by noon or early afternoon. With meloxicam she can have a day where she generally does OK as opposed to a few hours." AR 406. In May 2017, Plaintiff also told Dr. Tatsuro Ogisu, an examining physician, that meloxicam is helpful. AR 444. A February 2017 disability report provides the only instance during the relevant period when Plaintiff claimed meloxicam does not work. AR 246. Plaintiff stated that it does "not address the sharp myalgia pain, the pervasive lack of energy I experience, or other related symptoms of chronic fatigue (among these blurry vision, headaches during mental tasks, sleep cycle disruption)." *Id.* But Plaintiff also wrote that she "take[s] meloxicam daily to alleviate the often-intense pain I have due to these conditions," because meloxicam "takes the edge off the widespread muscle pain allowing me to function." AR 245-46. Thus, even that report is mixed.

The record thus reflects that Plaintiff made multiple declarations to multiple sources over several years of her symptoms improving with treatment, inconsistent with Plaintiff's subjective symptom testimony.

### b.  Failure to Seek Treatment and Receiving Conservative Treatment

The ALJ discounted Plaintiff's symptom testimony because, for multiple severe impairments, there were significant gaps in both treatment and reports of exacerbated symptoms. Some of those gaps continued through the entire relevant period; Plaintiff's treatment stopped

altogether. The ALJ also described that Plaintiff received only conservative treatment for her impairments.

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." *See* 20 C.F.R. § 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Therefore, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Additionally, routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If, however, the claimant has a good reason for not

seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ cited Plaintiff's prescribed conservative treatment, failure to follow treatment, and gaps in treatment. The ALJ explained that Plaintiff was prescribed conservative, routine treatment to treat her sleep apnea (a CPAP machine), knee pain (physical therapy), and fibromyalgia (meloxicam and gabapentin). The ALJ noted that Plaintiff was not even prescribed a stimulant for her sleep apnea or her CFS. AR 20. The ALJ emphasized that by late 2015, Plaintiff was failing to comply with her prescribed CPAP treatment. *Id.* The ALJ also noted that after 2015, Plaintiff has received "no additional evaluation or treatment for sleep apnea and treatment notes show no observations of the claimant being unalert or somnolent from sleep apnea symptoms." *Id.* Additionally, for Plaintiff's knee issue, despite Plaintiff seeing a physical therapist, the ALJ noted that Plaintiff had not seen a specialist since at least 2014. AR 21. The record supports these findings.

For Plaintiff's fatigue and pain, the ALJ noted that Plaintiff "did not report significant or persistent exacerbations in fibromyalgia or chronic fatigue symptoms in 2016" besides a dull ache in her back which lasted three weeks. AR 20. The ALJ noted this pattern of sporadic treatment continued into 2017. AR 21. The ALJ did not find a persuasive explanation for "lack of additional treatment for exacerbations in pain and fatigue" and wrote that Plaintiff "appears to have seen providers on an as needed basis during most of the period at issue." AR 22. These findings are supported by substantial evidence in the record as there are indeed large gaps in treatment with relatively few doctor's visits for the period at issue. Plaintiff did not report

PAGE 13 – OPINION AND ORDER

significant exacerbation of symptoms and even, as described above, reported that some

symptoms *improved* with her meloxicam.

### c.  Inconsistency with Activities of Daily Living

The ALJ also cited Plaintiff's ADLs as being inconsistent with Plaintiff's allegations of

disabling symptoms and limitations. Plaintiff specifically challenged this reason, claiming that

Plaintiff's activities did not contradict her statements or show an ability to sustain full-time work.

The Commissioner has effectively conceded this argument, precluding any discussion, and thus

this reason is not upheld.

Although the Commissioner does not expressly concede this point, she did not defend the

ALJ's reasoning or respond to Plaintiff's arguments. As a result, the Commissioner has waived

any argument that the ALJ provided on Plaintiff's ADL inconsistency. *See, e.g.*, *Megan, S. v.

Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has

waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's

purported improvement" by failing to respond to Plaintiff's arguments other than generally to

assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018)

(finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is

not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally

sufficient); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the

Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues);

*see generally United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an

appellee waives any argument it fails to raise in its answering brief.").

### d.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor

in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

In his analysis, the ALJ cited instances in the medical record that do not support the alleged severity of Plaintiff's symptoms. AR 20-23. The ALJ cited that both Plaintiff's CFS and fibromyalgia were noted to be "stable" at multiple points throughout the relevant period under review. AR 20-24. Although, one instance noted that Plaintiff was stable, but "chronic fatigue and pain issues still persist." AR 518.

The ALJ also determined that the mental examination findings of Dr. Cheryl Brischetto, Ph.D, did not support Plaintiff's allegations of disabling mental limitations caused by her fatigue and pain. AR 21. Dr. Brischetto's report, however, both supports and contradicts the ALJ's conclusion on Plaintiff's concentration and memory. Dr. Brischetto wrote that Plaintiff: (1) showed no signs of drowsiness during the examination, AR 555; (2) occasionally "had a word-finding problem, but not consistently so," AR 556; (3) had "logical and organized" thinking with "adequate insight and capacity for commonsense reasoning and judgment," AR 556, 558; (4) was "alert and fully oriented" with adequate rate of processing, AR 556; (5) was in the "high average range on the Arithmetic Subtest, in spite of the fact that she said she was tired and was having some trouble concentrating," *Id.*; (6) showed some weakness on brief memory recall, AR 558; (7) was only able to recall two out of three words at five minutes, remembering the third word with a cue, AR 556; (8) was both a "reliable" and "adequate"

historian, recalling three of the four states bordering Oregon and her dinner from the previous

night, AR 556, 558; and (9) had diminished mental persistence near the end of her two-hour

session, around when she said she was getting tired, AR 557. Dr. Brischetto diagnosed Plaintiff

with an "Unspecified Sleep-Wake Disorder." Dr. Brischetto specifically declined, however, to

make a diagnosis of either a neurocognitive or depressive disorder post examination. AR 557-58.

      The ALJ also cited that the objective medical evidence did not support Plaintiff's claims

regarding the severity of symptoms alleged for her knee. This finding is supported by substantial

evidence as well. Most references to Plaintiff's gait in the record refer to it being normal or

steady. *See e.g.*, AR 359, 446, 453, 457. There are only three instances in the record suggesting

otherwise. Dr. Brischetto's August 2017 report described Plaintiff's gait as "slowed and

somewhat awkward[.]" AR 555. A September 2017 report from Plaintiff's physical therapist,

Lisa Beck, stated that Plaintiff's gait was antalgic. AR 561. The September 2017 examination by

Dr. Ogisu included an observation that "occasionally, the right leg appears stiff and she limps a

little." This statement, however, is immediately preceded by a statement describing Plaintiff's

gait being as "steady," so this report could reasonably be interpreted as supporting the ALJ's

finding. AR 446.

      Overall, the ALJ's interpretation that the objective medical evidence does not support

Plaintiff's claimed limitations is rational. Although there may be other rational interpretations, in

such instances, the Court must defer to the ALJ's decision and not freshly examine the

ambiguities or substitute its judgment for that of the Commissioner. *See Batson* 359 F.3d

at 1193; *Burch*, 400 F.3d at 679. Thus, this reason supports the ALJ's conclusion regarding the

evaluation of Plaintiff's subjective symptom testimony.

### e.  Potential Fibromyalgia Legal Error

Plaintiff also alleges legal error, arguing that the ALJ rejected symptom testimony erroneously because of failure to properly analyze Plaintiff's fibromyalgia-related symptoms under SSR 12-2P.[3] The Court disagrees. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p and *Benecke*." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). The ALJ sufficiently engaged in this type of examination when considering Plaintiff's RFC.

In accordance with SSR 12-2P, the ALJ took a full look at Plaintiff's longitudinal record to account for waxing and waning symptoms. *See* AR 20-23; SSR 12-2P, *available at* 2012 WL 3104869 at *2 (July 25, 2012). The ALJ did not cherry-pick isolated improvements, and instead considered all of Plaintiff's symptoms, doctor visits, and treatment attempts for the relevant period. *See e.g.*, AR 21 ("Her primary care provider noted in May 2017 that she was stable, but with persistent fatigue and pain.").

Plaintiff cites as persuasive authority several unreported cases in which the Ninth Circuit reversed an ALJ's decision when the ALJ did not properly account for the unique symptoms of fibromyalgia. *Weiskopf v. Berryhill*, 693 Fed. App'x. 539 (9th Cir. 2017); *Payan v. Colvin*, 672 Fed. App'x 732 (9th Cir. 2016). *Hamilton-Carneal v. Colvin* 670 Fed. App'x. 613 (9th Cir. 2016). All are distinguishable. In *Weiskopf*, the ALJ did not consider Weiskopf's

---

[3] Plaintiff also briefly raises, but does not develop, a similar argument for CFS: "[s]imilarly, the ALJ failed to construe the evidence in light of Plaintiff's chronic fatigue syndrome impairment." ECF 14 at 16. To the extent this undeveloped argument is preserved, it is similarly unconvincing. The relevant ruling on CFS shows no deviation from how an ALJ typically evaluates symptom testimony in the two-step process. SSR 14-1P, *available at* 2014 WL 1371241, at *7 (April 3, 2014). The ALJ considered Plaintiff's CFS symptoms when forming Plaintiff's RFC in accordance with these standards.

fibromyalgia to be a medically determinable impairment. 693 Fed. App'x at 541-42. Here, the ALJ found Plaintiff's fibromyalgia was a severe impairment and incorporated its limitations into Plaintiff's RFC. In both *Payan* and *Hamilton-Carneal*, a lack of objective medical evidence was either the sole reason or the "central factor" in discounting Plaintiff's credibility. 672 Fed. App'x at 732; 670 Fed. App'x. at 614. Here, the ALJ gave several other reasons that were emphasized as having equal, if not greater, importance than the lack of supporting objective medical evidence. In short, the Court is not persuaded that these cases warrant remand on legal error associated with lack of fibromyalgia consideration.

**B.    Mental Impairment**

Plaintiff alleges that the ALJ should have followed the psychiatric review technique ("PRT") prescribed by 20 C.F.R. § 404.1520(a) in determining whether Plaintiff's mental health impairments were severe.[4] The ALJ found that Plaintiff did not have a "medically determinable mental impairment." 20 C.F.R. §404.1520a(b)(1). The Commissioner argues that the ALJ did not err because he need not determine the severity of a mental impairment if he determines none exists. *Dattilo v. Berryhill*, 773 Fed. App'x. 878, 881 (9th Cir. 2019) ("The 'special technique' requires the ALJ to determine whether the claimant has a 'medically determinable mental impairment, *and if so*, to rate the degree of functional imitation resulting from the impairment[.]'" (emphasis added), (simplified)).

Plaintiff disagrees and claims that Dr. Brischetto used medically acceptable clinical diagnostic techniques and diagnosed a mental impairment: Unspecified Sleep-Wake Disorder.

---

[4] In her reply brief Plaintiff raises a new argument: the ALJ did not properly consider the lay person testimony of Plaintiff's sister, son, and friends when making findings on how Plaintiff's impairment affects her mental functioning. The Court disregards this newly raised argument. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("arguments raised for the first time in a reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

This conclusion misunderstands the difference between a medical diagnosis and a medically determinable impairment. An impairment "must be established by objective medical evidence from an objective medical source." 20 C.F.R. § 404.1521. Dr. Brischetto did not conclude that Plaintiff had a limiting impairment (nor would any such conclusion absent objective medical evidence have sufficed to establish a medically determinable impairment). Dr. Brischetto merely reached a diagnosis. An ALJ cannot simply rely on a diagnosis to find a medically determinable impairment. *Id.* ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment.").

Additionally, in his opinion, the ALJ did not ignore Dr. Brischetto's findings and diagnostic techniques. The ALJ drew extensively from them in concluding that Plaintiff lacked a mental impairment. AR 21. The ALJ's discussion of concentration and memory, for example, almost entirely relied on Dr. Brischetto's 2017 examination. *Id.* The ALJ found that Plaintiff displayed only mild deficiencies in these areas. As detailed above, the Court defers to the ALJ's findings on this evaluation because they were a rational interpretation of the record supported by substantial evidence.

Further, the ALJ relied on more than just Dr. Brischetto's examination in concluding that Plaintiff did not have a medically determinable mental health impairment. The ALJ also relied on opinions from the consulting state agency physicians, Dr. Winifred Ju, Ph.D., and Dr. Scott Kaper, Ph.D. AR 24. Both doctors found that Plaintiff did not have a medically determinable mental impairment. AR 79, 95. Dr. Kaper also opined that Unspecified Sleep-Wake Disorder was not, "strictly speaking," a mental health diagnosis. AR 95. The ALJ was justified in relying on these opinions because neither Dr. Brischetto nor any other treating or examining doctor opined about Plaintiff's limitations due to psychological impairments.

Plaintiff also assigns error to the ALJ not properly considering the symptoms of fibromyalgia and CFS when finding that Plaintiff did not have a mental health impairment. The Court disagrees because the ALJ made findings in accordance with SSR 12-2p and SSR 14-1p, the regulations governing these conditions.

Again, neither diagnosis is in dispute, nor is their status as two of Plaintiff's severe medical impairments. But as discussed above, the ALJ properly made findings in accordance with SSR 12-2p with respect to Plaintiff's fibromyalgia by examining the record as a whole and concluding that: (1) Plaintiff was not limited in concentration and memory and (2) Plaintiff's failure to seek treatment was indicative of her conditions not being as severe as alleged.

Plaintiff relies on *Revels*, in which the Ninth Circuit remanded for benefits because an ALJ failed to consider the unique characteristics of fibromyalgia in his disability decision. 874 F.3d at 662. *Revels* is distinguishable. In *Revels*, the ALJ rejected the medical opinions of several treating and examining sources. *Id.* at 659-65. For example, the ALJ assigned no weight to a treating rheumatologist who had seen Revels twelve times over two years. *Id*. at 662. The ALJ also assigned no weight to an examining physical therapist who opined that the Revels would not be able to "maintain any sustained functional work position in order to function at a rate conducive to gainful employment." *Id.* at 559. In both rejections the ALJ failed to provide a legally sufficient reason and his reasoning "was based on a flawed understanding of fibromyalgia." *Id.* at 665. Here, the ALJ did not reject the opinion of any treating or examining provider. Further, no treating or examining provider, whether an acceptable medical source or otherwise, opined that Plaintiff had any mental limitation that would inhibit her ability to work.

For Plaintiff's CFS, the relevant ruling lists potential mental limitations that can stem from this condition, including potential "short-term memory or concentration severe enough to

cause substantial reduction in previous levels of occupational, education, social, or personal

activities. SSR 14-1P, *available at* 2014 WL 1371245 at *3 (April 3, 2014). Like fibromyalgia,

CFS often requires longitudinal evidence, requiring the ALJ to examine the record as a whole.

*Id.* at *5. But any mental limitation alleged must still be supported by objective medical

evidence. *Id.* ("When medical signs or laboratory findings suggest a persistent neurological

impairment or other mental problems, and those signs or findings are appropriately documented

in the medical record, we may find that person has an MDI.") As noted in this opinion, there is

substantial evidence in the record supporting the ALJ's finding that Plaintiff only has mild

limitations with concentration and memory. Thus, although CFS *can* present as a medically

determinable mental impairment, the ALJ did not err in concluding otherwise.

In a case factually similar to the case at bar, the Ninth Circuit held that an ALJ did not err

when he found no mental impairment despite the plaintiff's diagnosis of sleep disorder and

chronic pain. *Coleman v. Colvin*, 524 Fed. App'x. 325, 326 (9th Cir. 2013). The plaintiff had

failed to present "any evidence of signs or laboratory findings establishing that [plaintiff]

suffered from a mental impairment." *Id.* Much like the clamant in *Coleman*, Plaintiff points to a

sleep disorder diagnosis as establishing a mental impairment but fails to support it with objective

medical evidence. A mere diagnosis is not "significant probative evidence" whose rejection

requires an explanation. *Id.* (citing *Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1394-95

(9th Cir. 1984) (quotation marks and citations omitted)).

Failure to follow the PRT is only harmful error if the claimant has a "colorable claim of

mental impairment." *See Keyser* 648 F.3d at 726 (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051

(9th Cir. 2000)). And, like in *Coleman*, because Plaintiff failed to establish a medically

determinable mental impairment, she also "failed to establish a colorable claim of mental

impairment such that the ALJ had no duty to apply the special psychiatric review technique." 524 Fed. App'x at 326. Thus, the ALJ did not err because he properly determined that no medically determinable mental impairment exists.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 8th day of October, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge